IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN W. GOFF, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:12cv53-MHT |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion by John W. Goff ("Goff") to vacate, set

aside, or correct sentence under 28 U.S.C. § 2255.

# I.  INTRODUCTION

On February 17, 2009, a jury found Goff guilty of one count of embezzlement of

insurance company funds, in violation of 18 U.S.C. § 1033(b)(1)(A) (Count 2 of the

indictment); twenty-three counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts 3

through 25); and one count of making a false statement to an insurance regulatory agency,

in violation of 18 U.S.C. § 1033(a) (Count 26).[1] On June 2, 2009, the district court sentenced

Goff to 144 months in prison (120 months on Count 2, 144 months on Counts 3 through 25,

and 120 months on Count 26, all served concurrently).

Goff appealed, presenting claims that (1) the evidence was insufficient to support his

---

[1] The district court granted the defense's motion for judgment of acquittal as to Count 1 of
the indictment, a conspiracy count.

conviction on the counts of mail fraud; (2) the evidence was insufficient to support his conviction for embezzlement; (3) the indictment should have been dismissed because it was improperly sealed and therefore did not toll the statute of limitations; (4) the application he submitted to the Alabama Department of Insurance was not a financial document for purposes of 18 U.S.C. § 1033(a); and (5) the government violated his right to due process by intimidating one of his potential witnesses.  On October 18, 2010, the Eleventh Circuit Court of Appeals issued an opinion affirming Goff's convictions and sentence.  *United States v. Goff*, 400 F. App'x 507 (11th Cir. 2010).

On January 10, 2012, Goff filed this motion under 28 U.S.C. § 2255 claiming that his trial counsel rendered ineffective assistance by failing to present advice-of-counsel evidence from the civil attorneys who provided him with legal representation regarding his insurance business.  Doc. No. 1 at 3-5.[2]  The government responds that Goff's claim is without merit. For the reasons that follow, the court finds an evidentiary hearing is not required and that, under Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the § 2255 motion should be denied.

## II.  DISCUSSION

### A.    Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel must be evaluated against the two-part

---

[2] Except where indicated, document numbers ("Doc. No.") are those assigned by the Clerk in the instant civil action.  All page references are to those assigned by CM/ECF.  References to exhibits ("Ex.") are to exhibits filed by the government with its response, Doc. No. 9.

test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000).

Scrutiny of counsel's performance is highly deferential, and the court indulges a strong presumption that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314. The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether

3

the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) (citing *Strickland*, 466 U.S. at 687).

**B.    Failure to Present Advice-of-Counsel Evidence**

Gofff contends his trial counsel rendered ineffective assistance by failing to present advice-of-counsel evidence through testimony from Thomas Gallion and Jamie Johnston, civil attorneys with the law firm that provided legal representation to Goff regarding his insurance business.[3]  Doc. No. 1 at 3-5.  Goff argues testimony from Gallion and Johnston would have established an advice-of-counsel defense centered on the argument that, based on legal advice he received from the two attorneys, he had believed his business dealings to be lawful and thus did not have the requisite specific intent to defraud. *Id*.

Goff's insurance business, the Goff Group, Inc. ("the Goff Group"), was engaged in the business of selling workers' compensation insurance to businesses required to maintain

---

[3] Goff's trial counsel in his criminal case were attorneys Jeremy S. Walker, Milton C. Davis, and Donald R. Jones.

4

coverage for their employees.  Under a Program Manager Agreement ("PMA") entered into in January 2000 with XL Specialty and Greenwich Insurance Companies ("XLS/G"), the Goff Group sold and administered workers' compensation insurance policies issued by XLS/G and collected premiums from insured businesses on behalf of XLS/G before remitting part of these monies to XLS/G.  Under the PMA, the Goff Group was also responsible for paying commissions to independent insurance agents who represented businesses insured by XLS/G via the Goff Group.

The criminal charges against Goff involved allegations he defrauded XLS/G when, from January 2002 through April 2003, he withheld premiums (for several millions dollars) collected from insured businesses and spent the money on his exorbitant salary and lavish lifestyle rather than remitting the monies owed to XLS/G.  *See* Ex. B at 1-20.  In addition, Goff was charged with improperly withholding commissions owed to several independent insurance agents.  *Id*.

Goff maintains he withheld the premiums from XLS/G because of a "contract dispute" over monies owed, and Gallion and Johnston, in their capacity as counsel for the Goff Group, had advised him that (1) he had a right under the PMA to offset payments to XLS/G with amounts he believed were owed to him, (2) he should remit nothing further to XLS/G until the contract dispute was settled, and (3) the Goff Group should seek to resolve the matter by suing XLS/G.  Doc. No. 1 at 3-5.  According to Goff, Gallion and Johnston would have provided testimony to this effect, which he argues would have bolstered his claim he lacked

the specific intent to commit fraud and was relying in good faith on the advice of his attorneys when he failed to remit the premiums to XLS/G. *Id*. As such, he contends his trial counsel in his criminal case rendered ineffective assistance by failing to present testimony from Gallion and Johnston and by failing to take steps to ensure the two attorneys would be available to testify in his defense. *Id*.

Goff's trial counsel presented a defense centered on the theme that, during the times relevant to the charges against Goff, matters between the Goff Group and XLS/G were unsettled and were being litigated in civil court; that under the PMA, the Goff Group had a contractual right of offset governing its relationship with XLS/G; that the Goff Group had been financially damaged by XLS/G's abrupt termination of its business relationship with the Goff Group; and that the premiums the Goff Group collected for the benefit of XLS/G could be offset by the damages XLS/G caused by terminating the business relationship. In addition, Goff's counsel presented a defense theory that the custom and tradition of the insurance industry and the pattern and practice of the Goff Group and XLS/G allowed Goff to offset and retain collected premiums against earned commissions and monies owed to the Goff Group by XLS/G; that, seasonally, the parties would reconcile their accounts; and that strict and timely remittance of collected premiums was neither required nor expected by the parties.

Under orders from this court, Goff's trial counsel, Jeremy S. Walker, Milton C. Davis, and Donald R. Jones, submitted affidavits addressing Goff's claim they rendered ineffective

6

assistance by failing to present advice-of-counsel evidence through testimony from civil attorneys Gallion and Johnston. *See* Doc. Nos. 4, 4-1, 4-2, 6, and 6-1. The gist of these affidavits reflects that Goff's trial counsel concluded testimony from Gallion and Johnston would have been detrimental to Goff's cause, and that the possible benefit from testimony from Gallion and Johnston was substantially outweighed by the likelihood that calling the two attorneys to testify would have resulted in damage to Goff's defense. Of particular concern to Goff's trial counsel was the likelihood that testimony from Gallion and Johnston would reveal Goff had not disclosed to the civil attorneys material facts about the true nature of his own actions and course of dealings with XLS/G when obtaining the attorneys' legal advice about whether to remit disputed monies to XLS/G, and that Johnston had specifically advised Goff to place disputed monies in an escrow account (something Goff did not do) and would have contradicted any defense contention that Goff's civil attorneys advised him he could spend disputed monies on business operations and for personal distributions to himself.

In his affidavit, which is consistent in all relevant respects with those of Davis and Jones, trial counsel Walker avers in pertinent part:

> The criminal allegations [against Goff] arose from complex, multi-district civil litigation between Goff, his former company Goff Group and an insurance company XL Insurance Ltd.
>
> 4. Prior to trial we interviewed dozens of witnesses who Goff stated would support his innocence. In fact, virtually none of these witnesses supported Goff's version of events and wholly or in part, offered contradictory evidence to what Goff had led his lawyers to believe.
>
> 5. . . . Short on potential witnesses to support the theory of defense, we

7

advanced an advice of counsel defense in pretrial motions in anticipation that Goff's former counsel Jamie Johnston and/or Thomas T. Gallion, III may be called as witnesses in Goff's case in chief.

6.   We proceeded to a two-week trial and the government presented approximately 50 witnesses against Goff.  As the trial developed we were able get our theory of defense out through cross-examination of the government's witnesses.  Jamie Johnston was placed under subpoena by the United States during the government's case in chief.  She retained counsel and was not as cooperative with the defense as we would have preferred.  We made a judgment decision not to subpoena her and compel her testimony.  Like every potential Goff witness, the downside of her testimony was extremely harmful to Goff's defense.  Ms. Johnston would have likely testified if asked on cross-examination by the Government that she specifically told Goff to place disputed monies into an escrow account and at no time did she or any other lawyer in Goff's civil litigation tell him it was permissible to spend these disputed monies to operate his company or spend these monies on himself.

7.   At Goff's urging, we did attempt to call Thomas T. Gallion, III to testify at trial.  However, the Government objected to Mr. Gallion's testimony and Judge Thompson ordered us to proffer Mr. Gallion's testimony outside the presence of the jury.  At the beginning of Mr. Gallion's proffer, an Assistant United States Attorney suggested that the Court read Mr. Gallion his *Miranda* warnings as a potential unindicted coconspirator.  Judge Thompson declined to do so and Mr. Gallion proceeded in his proffer outside the presence of a jury and testified to his basic knowledge of the Goff Group-XL civil dispute.  Significantly, he also testified that he had virtually no knowledge of Goff's financial dealings.  Judge Thompson considered whether he would permit Gallion to testify as [a]witness overnight.  However, after consulting with his own counsel regarding what he perceived to be a threat by the Assistant U.S. Attorney, Mr. Gallion withdrew as a witness.  The issue of Mr. Gallion withdrawing as a witness in response to the Government threat was unsuccessfully presented as an issue on Goff's appeal.

8.   Goff elected not to testify on his own behalf.  We felt we had put forward the best defense possible for Goff through cross-examination of the government's witnesses and rested.

      . . .

8

10.  While we did not fully appreciate it at the time, compelling Ms. Johnston to testify and be subjected to cross-examination would have been a devastating blow to the defense.  The evidence was overwhelming that Goff did in fact take and spend the money he was accused of taking and no attorney advised him that he could do so.  As the trial developed, the downside of Ms. Johnston's potential testimony far outweighed any marginal benefit to the defense.

11.  Likewise, compelling Thomas T. Gallion, III to testify against his will would have resulted in nothing more than invoking his 5th Amendment privilege in response to the warning by the Assistant United States Attorney.  Again, it would have been a devastating blow to the defense to have one of Goffs attorneys invoke his 5th Amendment privilege in front of the jury.

12. The decision to call witnesses, including Goff's civil attorneys, was carefully considered by Goff's defense team.  It was our judgment that Goff's civil counsel would add virtually nothing to Goff's defense that was not presented through cross-examination and that the risk of said testimony far outweighed any potential benefit.

Doc. No. 4-1 at 2-4.

The record reflects that, after hearing Gallion's proffered testimony outside the presence of the jury, the district court ruled that Goff could present an advice-of-counsel defense; that Gallion would be allowed to testify before the jury; and that the court would leave to the jury whether Goff had established a viable advice-of-counsel defense.  Ex. P at 3-4.  However, after making a risk-benefit assessment of the value of presenting testimony from Gallion, Goff's trial counsel chose not to call Gallion to the stand and eschewed the advice-of-counsel strategy.  *Id*. at 5-6.  Goff's counsel did request and obtain a jury instruction on the defense of "good faith," consistent with the defense theory that, even apart from any advice received from his civil attorneys, Goff had acted under his good-faith belief

that, under the PMA, he could offset the monies he believed XLS/G owed him.  *See* Case No. 2:07cr322-MHT, Doc. No. 170 at 109-10.

Strategic choices of counsel made after thorough investigation of the law and facts relevant to plausible options are "virtually unchallengeable."  *Strickland*, 466 U.S. at 690. "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."  *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).  *See also, e.g., Dingle v. Sec'y for Dep't of Corrs.*, 480 F.3d 1092, 1099 (11th Cir. 2007).

> [A] court must not second-guess counsel's strategy.  *Waters [v. Thomas]*, 46 F.3d [1506,] at 1518-19 [(11th Cir. 1995)] (en banc).  By "strategy," we mean no more than this concept:  trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client.  For example, calling some witnesses and not others is "the epitome of a strategic decision."  *Id*. at 1512 (en banc); *see also id.* at 1518-19 (en banc); *Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995) (whether to pursue residual doubt or another defense is strategy left to counsel, which court must not second-guess); *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir. 1983) (stating that reliance on line of defense to exclusion of others is matter of strategy).

*Chandler*, 218 F.3d at 1314 n.14.

Here, the decision by Goff's trial counsel ultimately not to pursue an advice-of-counsel defense by presenting testimony from Gallion and Johnston falls within the wide range of reasonable professional assistance.  This strategy choice was not "so patently unreasonable" that no competent lawyer would have chosen it.  *Adams*, 709 F.2d at 1145. Johnston had evidenced a clear unwillingness to give testimony beneficial to an advice-of-

10

counsel defense and appeared likely to give testimony contradicting Goff's contention that his actions resulted from his following the advice of his civil attorneys. Gallion's proffered testimony revealed he had limited knowledge of Goff's financial dealings. Further, after the hearing at which Gallion's testimony was proffered, Gallion indicated a reluctance to testify in Goff's defense before the jury. Goff's trial counsel therefore feared that calling Gallion to testify against his will would have resulted in Gallion's invoking his Fifth Amendment privilege in front of the jury, which had the potential of reflecting poorly upon Goff.

Even assuming neither Gallion nor Johnston invoked the Fifth Amendment privilege and both testified before the jury, whatever boon Goff might have gained from presenting their testimony that they had advised him he had a right under the PMA to offset payments to XLS/G with amounts he believed were owed to him, and that he should remit nothing further to XLS/G until the "contract dispute" was settled, would have been neutralized – or worse – by evidence showing that Goff had ignored Johnston's specific advice to place disputed monies in an escrow account and that, in obtaining legal advice from the two attorneys, Goff failed to disclose to them material facts about his actual course of dealings with XLS/G. Most significantly, Goff failed to disclose to Gallion and Johnston that premiums he had already withheld from XLS/G before obtaining their legal advice led to XLS/G's decision to terminate its business relationship with the Goff Group. Thus, the evidence showed Goff's pattern of withholding monies from XLS/G was established well before he received the legal advice from Gallion and Johnston.

11

The evidentiary predicate required for an advice-of-counsel defense is that "[(1)] the defendant 'fully disclosed all material facts to his attorney' and [(2)] 'relied in good faith on the advice given by his attorney.'" *United States v. Petrie*, 302 F.3d 1280, 1287 (11th Cir. 2002) (quoting *United States v. Condon*, 132 F.3d 653, 656 (11th Cir. 1998)). Here, if faced with testimony about the legal advice given to Goff by Gallion and Johnston, the government could have established through cross-examination, and argued convincingly, that Goff failed to support an advice-of-counsel defense because he did not disclose all material facts to the attorneys to be entitled to claim the benefit of that defense. Weighing the limited value of testimony from Gallion and/or Johnston against the risk that calling them to testify would damage Goff's defense, the decision by Goff's counsel not to pursue an advice-of-counsel defense was professionally reasonable.

Finally, Goff does not establish a reasonable probability that pursing an advice-of-counsel defense through the testimony of Gallion and Johnston would have resulted in a different outcome, especially given the substantial evidence regarding the true reasons Goff withheld monies from XLS/G and the above-discussed likelihood that an advice-of-counsel defense would have been countered by evidence undermining such a defense. The "totality of the circumstances," including the strength of the prosecution's case, should be considered in assessing a claim of ineffective assistance of counsel. *See Adams v. Balkcom*, 688 F.2d 734, 738 (11th Cir. 1982); *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir. 1981). The court finds no reasonable probability that the strategic choice by Goff's trial counsel not to

call Gallion and Johnston to testify affected the outcome of the trial.

For the reasons set forth above, the court concludes Goff is not entitled to relief based on his claim of ineffective assistance of counsel.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Goff be DENIED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 5, 2015**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions

of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 22nd day of January, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE